UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Andrea Vialva,<br><br>Plaintiff,<br><br>-against-<br><br>Wells Fargo Bank, N.A.; Experian Information Solutions, Inc.,<br><br>Defendants. | Civil Action<br>Case No.: 1:26-cv-05413<br><br>**COMPLAINT** |

Plaintiff Andrea Vialva ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, alleges as follows upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters:

1. Plaintiff brings this action against Experian Information Solutions, Inc. ("Experian"), and Wells Fargo Bank, N.A. ("Wells Fargo"), arising from their willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

2. Someone opened a Wells Fargo credit card in Plaintiff's name. She learned of it in June 2026, reported it to the Federal Trade Commission under penalty of perjury, and sent all three national consumer reporting agencies the same dispute package with the same proof. TransUnion deleted the account. Equifax deleted the account. Experian did not.

3. Wells Fargo, which holds every record that would have answered the question in an afternoon, told Experian the debt was hers and kept furnishing it. Forty-six days after Plaintiff disputed the Account, Experian was still reporting it as a charged-off balance she owed. It is now the only derogatory item on her Experian file, and her Experian score is the lowest of her three.

## PARTIES

4. Plaintiff is an individual resident of the State of New York, residing in Kings County, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Wells Fargo is a national banking association organized under the laws of the United States, and is a "person" within the meaning of 15 U.S.C. § 1681a(b) and a furnisher of information to consumer reporting agencies as defined by and subject to the FCRA, including under 15 U.S.C. § 1681s-2.

6. Experian is an Ohio corporation, with its principal place of business in Costa Mesa, California, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

7. Non-party Trans Union LLC a/k/a TransUnion ("TransUnion") is a consumer reporting agency that maintained a consumer file concerning Plaintiff and that reported the Wells Fargo Account on Plaintiff's consumer reports.

8. Non-party Equifax Information Services LLC ("Equifax") is a consumer reporting agency that maintained a consumer file concerning Plaintiff and that reported the Wells Fargo Account on Plaintiff's consumer reports.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law.

10. This Court has personal jurisdiction over each Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and New York Civil Practice Law and Rules ("CPLR") §§ 301 and 302, and the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.

11. Wells Fargo transacts business within the State of New York within the meaning of CPLR § 302(a)(1). It markets and offers consumer financial products and services to New York residents, extends credit to and maintains accounts for them, and regularly furnishes information concerning New York consumers to the national consumer reporting agencies. Plaintiff transmitted her dispute from New York, and Wells Fargo, on notice that Plaintiff was a New York consumer, continued to furnish information into her consumer file. Plaintiff's claims against Wells Fargo arise from that New York-directed conduct.

12. Experian transacts business within the State of New York. It maintains consumer files on New York residents, including Plaintiff. It prepares and sells consumer reports concerning New York residents to users located in New York, including creditors, lenders, and landlords, and it prepared, sold, or disseminated consumer reports concerning Plaintiff to such users. Experian is registered to do business in New York and maintains a registered agent for service of process here, CT Corporation System, 28 Liberty Street, New York, New York 10005.

13. Plaintiff transmitted her dispute to Experian from New York, and Experian directed its reinvestigation and its handling of her identity-theft block request at the consumer file of a New York resident. Plaintiff's claims against Experian arise from that New York-directed conduct.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the dissemination of and reliance upon Plaintiff's consumer reports here and the harm Plaintiff suffered here.

## STATEMENT OF FACTS

15. Plaintiff is a victim of identity theft.

16. An account was opened with Wells Fargo Bank, N.A. in Plaintiff's name, without Plaintiff's knowledge, consent, or authorization. The consumer reporting agencies reported that account under the tradeline name WFBNA CARD, Account No. 5774XXXX, with an opening date of February 1, 2020 (the "Account").

17. Plaintiff never applied for, authorized, opened, used, or benefited from the Account, and she holds no records concerning it. The application, signature, identification, device, and transaction records for the Account are in Wells Fargo's possession, custody, and control.

18. On June 15, 2026, Plaintiff obtained a tri-bureau consumer report through a consumer credit monitoring service, and on June 16, 2026, she discovered the Account upon reviewing that report.

19. On June 17, 2026, Plaintiff filed an identity theft report with the Federal Trade Commission, Report No. 202942283 (the "FTC Report"), identifying the Account as a credit card account opened by an identity thief.

20. Experian, TransUnion, and Equifax each reported the Account in derogatory status at collection or charge-off, with a balance of $1,234.00 and an amount past due of $1,234.00.

21. Wells Fargo reported to Experian that the first payment on the Account was never received and that the unpaid balance had been reported as a loss by the credit grantor.

22. The pre-dispute report reflected materially different payment histories for the Account across the three consumer reporting agencies over the same twenty-four-month period.

23. Experian reported the account as charged off in each of those twenty-four months.

24. Equifax reported the account as paid as agreed in twenty-three of them.

25. TransUnion reported no payment history at all.

26. Those histories cannot all be accurate. Equifax reported the Account as derogatory, at collection or charge-off, with the full balance of $1,234.00 past due, while simultaneously reporting twenty-three consecutive months in which the account was paid as agreed. Wells Fargo's statement that the first payment on the account was never received cannot be reconciled with the date of last payment of April 1, 2020 that Wells Fargo reported to Equifax.

27. Plaintiff does not seek correction of the payment history. She seeks deletion. The Account is not hers, and no payment history on an account she never opened can be made accurate.

28. A single furnisher reporting one account to three agencies over one period cannot produce a twenty-four-month charge-off history, a twenty-three-month history of on-time payment, and no history at all where reasonable procedures are followed. The divergence is itself evidence that those procedures were not followed.

29. While the Account was reported on Plaintiff's Experian consumer file, Experian furnished consumer reports concerning Plaintiff to third parties. Experian's own disclosure to Plaintiff records nine such disclosures in the two years preceding this action: to JPMCB Card on September 18, 2025, and again on June 24, 2025, to Macy's on June 29, 2025, and, on October 15, 2024, to Bank of America, to Santander Consumer USA, to VW Credit, to Ally Financial twice, and to an automobile dealer. Each of those disclosures was made while Experian was reporting the Account as charged off with a balance of $1,234.00 past due.

30. Plaintiff pleads those disclosures to establish that the inaccurate reporting was material, that it reached actual lenders, and that the harm was already underway when Experian received her dispute. She does not plead them as damages flowing from Experian's later failure to reinvestigate.

31. On June 26, 2026, Plaintiff transmitted a comprehensive written dispute package to Experian, TransUnion, and Equifax.

32. The dispute package included a formal dispute letter, proof of identity, the FTC Report, and a copy of Plaintiff's consumer report. The dispute letter identified the Account as an account resulting from identity theft and demanded that it be blocked and removed from Plaintiff's consumer reports.

33. Upon receipt of Plaintiff's dispute, pursuant to 15 U.S.C. § 1681i(a)(2), Experian was required to provide notification of the dispute to Wells Fargo, as the furnisher of the disputed information, before the expiration of the five (5) business day period beginning on the date of receipt of Plaintiff's dispute, and to include with that notification all relevant information regarding the dispute received from Plaintiff.

34. Upon receipt of Plaintiff's dispute forwarded by Experian, Wells Fargo was required to conduct a reasonable investigation with respect to the disputed information, to review all relevant information provided by Experian, and to report the results of its investigation to Experian, pursuant to 15 U.S.C. § 1681s-2(b).

35. Pursuant to 15 U.S.C. § 1681c-2(a), upon receipt of Plaintiff's identification, the FTC Report, her identification of the Account as information resulting from identity theft, and her statement that the account does not relate to any transaction by her, Experian was required to block the reporting of that information no later than four (4) business days after the date of receipt.

36. Pursuant to 15 U.S.C. § 1681c-2(b), Experian was further required, promptly upon receipt of Plaintiff's block request, to notify Wells Fargo that the information it had furnished may be the result of identity theft, that an identity theft report had been filed, that a block had been requested, and of the effective dates of the block.

37. On August 11, 2026, Plaintiff obtained a post-dispute consumer report reflecting that the Account no longer appeared on Plaintiff's TransUnion or Equifax consumer reports but continued to appear on Plaintiff's Experian consumer report in derogatory status at collection or charge-off.

38. Wells Fargo conducted no reasonable investigation of the disputed information. It corrected nothing and it deleted nothing. The derogatory information it had furnished concerning the Account remained on Plaintiff's Experian consumer report after Wells Fargo received notice of the dispute.

39. Experian conducted no reasonable reinvestigation, reviewed none of the material Plaintiff submitted, and blocked, deleted, and corrected nothing. Forty-six days after Plaintiff transmitted her dispute, the Account was still reporting in derogatory status. The statute allows thirty. 15 U.S.C. § 1681i(a)(1)(A).

40. TransUnion and Equifax each deleted the Account in response to the same dispute package. Experian, working from the identical documents, kept reporting it. A reasonable reinvestigation would have produced the same result Experian's two competitors reached on the same record.

41. Whatever reinvestigation Experian conducted was not a reasonable one. Upon information and belief, Experian limited its reinvestigation to transmitting Plaintiff's dispute to Wells Fargo and adopting whatever response Wells Fargo returned, without independently reviewing the contents of its own file on Plaintiff. That was not enough. The inaccuracy Plaintiff disputed was apparent on the face of Experian's own records and did not depend on anything only Wells Fargo possessed.

42. A reasonable reinvestigation required Experian, at a minimum, to read the payment history it was publishing against the account status it was publishing, to reconcile the high credit, credit limit, and date of last activity in its file against the data Wells Fargo sent and against what the other two agencies reported on the same tradeline, to weigh the sworn FTC Report, and to stop reporting what it could not verify.

43. Had Experian taken those steps, it would have discovered that it was reporting a charged-off balance of $1,234.00 on an account Plaintiff had identified under penalty of perjury as opened by an identity thief, that it was reporting twenty-four consecutive months of charge-off on an account it elsewhere reported as last active in October 2020, and that the two other agencies reporting the same tradeline had reached the opposite result on the same dispute package. Experian corrected nothing and deleted nothing.

44. Experian's own post-dispute report shows that the Account was not revisited at all. Every field Experian reported before the dispute it reported again after it, including a date last reported of April 30, 2026, which is two months before Plaintiff transmitted the dispute and more than three months before Experian issued the report.

45. The Account is now the only derogatory item on Plaintiff's Experian consumer file. Her TransUnion and Equifax files carry no derogatory item at all. Her Experian credit score is the lowest of her three, and it is lowest because of a debt that is not hers.

46. Upon information and belief, Experian continued to disclose Plaintiff's consumer report, including the Account, to users after Plaintiff transmitted her dispute on June 26, 2026. Throughout that period Experian maintained the Account in Plaintiff's file and held it available for disclosure to any user who requested a report concerning her, and Experian in fact issued a report reflecting the Account on August 11, 2026.

47. As a direct and proximate result, Plaintiff continues to suffer the dissemination of derogatory information about her to users of her Experian consumer report.

48. Plaintiff has also suffered significant emotional distress, including stress, anxiety, sleep disturbance, fear, worry, anger, and frustration. That distress began on June 16, 2026, when Plaintiff discovered that a charged-off credit card debt she had never incurred was being reported against her. It deepened on August 11, 2026, when she learned that Experian had left the Account on her file unchanged after two other national agencies had removed it on the same evidence. It has continued every day the Account has remained on her Experian file.

49. Plaintiff paid out of pocket to pursue correction of the Account. She purchased a consumer credit monitoring subscription twice at her own expense: once to obtain the tri-bureau reports that let her identify and dispute the fraudulent account, and again to find out what the reinvestigation had produced.

50. Plaintiff has spent more than twenty (20) hours of her own time attempting to investigate and resolve the fraudulent reporting of the Account.

51. The Account has impaired Plaintiff's access to credit. Every user who requests her Experian consumer report receives a report stating that she owes a charged-off balance of $1,234.00, and her Experian credit score, depressed by the only derogatory item on her file, denies her the terms available to a consumer with her actual payment history.

52. The injury Plaintiff has suffered bears a close relationship to a harm long actionable at common law in defamation: the publication to third parties of a false statement that she borrowed money and failed to repay it. Plaintiff does not complain of a bare procedural violation. She complains of the continued publication of a false and derogatory statement about her

creditworthiness, of money spent and time lost correcting it, and of the emotional distress that has accompanied both.

## CAUSES OF ACTION

### COUNT I: Willful Noncompliance With The FCRA Against Wells Fargo (Violations of 15 U.S.C. § 1681s-2(b))

53. Plaintiff incorporates by reference each of the preceding paragraphs.

54. Upon Experian's transmittal of Plaintiff's notice of dispute, Wells Fargo was obligated under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation with respect to the disputed information, to review all relevant information Experian provided, to report the results of that investigation to Experian, to report any finding of inaccuracy to every other consumer reporting agency to which it had furnished information concerning the Account, and to modify, delete, or permanently block the reporting of information it found to be inaccurate, incomplete, or incapable of verification.

55. Wells Fargo had reasonable cause to believe that the information it furnished concerning the Account was inaccurate, based on its own lack of any documentation reflecting that Plaintiff applied for, opened, or authorized the account, and upon Experian's notification of Plaintiff's formal dispute.

56. The Account was reported with a balance of $1,234.00 in derogatory status on Plaintiff's Experian consumer report. The Account was opened without Plaintiff's knowledge, consent, or authorization, and is a fraudulent account resulting from identity theft, as identified in the FTC Report.

57. After receiving notice of the dispute, Wells Fargo neither corrected nor deleted the information it had furnished, and that information remained on Plaintiff's Experian consumer report. It did so knowing, or having reasonable cause to believe, that the reporting was inaccurate.

58. Had Wells Fargo conducted a reasonable investigation, the result would have been different. A reasonably prudent furnisher reviewing the account records in its own possession against Plaintiff's sworn FTC Report would have determined that Plaintiff did not apply for, open, or use the Account and that the information Wells Fargo furnished was inaccurate.

59. Wells Fargo's conduct was willful. Wells Fargo acted with knowledge of its obligations under 15 U.S.C. § 1681s-2(b), or in reckless disregard of those obligations and of Plaintiff's rights, and any reading of those obligations that would permit its conduct here is objectively unreasonable.

60. Wells Fargo furnished, as to one account and over one period, a twenty-four-month charge-off history to Experian, a twenty-three-month history of on-time payment to Equifax, and no payment history at all to TransUnion. A furnisher does not generate three irreconcilable records of the same account by accident. It generates them by reporting without any procedure for verifying what it reports. Wells Fargo also told Experian that the first payment on the Account was never received, while reporting to Equifax a date of last payment of April 1, 2020.

61. Wells Fargo then received Plaintiff's dispute, accompanied by her sworn FTC Report, and continued to report. TransUnion and Equifax each ceased reporting the Account on the strength of that same package. Wells Fargo, which holds the application, signature, device, and transaction records that would have resolved the question, corrected nothing.

62. As a direct and proximate result of Wells Fargo's willful failure to comply with 15 U.S.C. § 1681s-2(b), Plaintiff suffered the injuries alleged above, and is entitled to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

**COUNT II: Negligent Noncompliance With The FCRA Against Wells Fargo (Violations of 15 U.S.C. § 1681s-2(b))**

63. Plaintiff incorporates by reference each of the preceding paragraphs.

64. In the alternative to Count I, Wells Fargo's conduct constituted negligent noncompliance with its duties as a furnisher of information under 15 U.S.C. § 1681s-2(b).

65. Wells Fargo failed to exercise reasonable care in furnishing information concerning the Account and in investigating Plaintiff's dispute. A reasonably careful furnisher would have measured the data it was reporting against its own account records, would have weighed the sworn FTC Report, and would have deleted a tradeline it could not verify.

66. As a direct and proximate result of Wells Fargo's negligent failure to comply with 15 U.S.C. § 1681s-2(b), Plaintiff suffered the injuries alleged above, including the continued dissemination of derogatory information concerning her, damage to her creditworthiness and reputation, out-of-pocket expense, lost time, and emotional distress, and is entitled to actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**COUNT III: Willful Noncompliance With The FCRA Against Experian (Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

67. Plaintiff incorporates by reference each of the preceding paragraphs.

68. Experian received Plaintiff's dispute of the Account on June 26, 2026.

69. Pursuant to 15 U.S.C. § 1681i(a), upon receipt of Plaintiff's dispute, Experian was required to conduct a reasonable reinvestigation to determine the accuracy of the disputed information and record the current status of the disputed information, or delete the item from the file, within thirty days of receiving the dispute.

70. Experian failed to conduct a reasonable reinvestigation. Upon information and belief, Experian did no more than relay Plaintiff's dispute to Wells Fargo and adopt the answer Wells Fargo returned, without opening its own file on Plaintiff.

71. That was not enough here. The inaccuracy Plaintiff disputed was visible on the face of Experian's own records. Experian was reporting twenty-four consecutive months of charge-off on an account it elsewhere reported as last active in October 2020, and a charged-off balance of $1,234.00 on an account Plaintiff had identified under penalty of perjury as the work of an identity thief.

72. Experian failed to review all relevant information Plaintiff submitted, including the FTC Report, and failed to delete or correct the inaccurate information or to record its current status.

73. Upon information and belief, Experian never provided Plaintiff with written notice of the results of any reinvestigation of the Account, and never provided the revised consumer report or the accompanying disclosures that 15 U.S.C. § 1681i(a)(6) requires.

74. Experian's failure to perform a reasonable reinvestigation was willful. Experian acted with knowledge of its duties under 15 U.S.C. § 1681i, or in reckless disregard of those duties and of Plaintiff's rights, and any reading of those duties that would permit its conduct here is objectively unreasonable.

75. Experian's own post-dispute report shows the Account was never revisited. Every field Experian reported before the dispute it reported again after, including a date last reported of April 30, 2026, which precedes the dispute by two months. Two other agencies, working from the identical package, deleted the tradeline. Experian changed nothing.

76. As a direct and proximate result of Experian's willful failure to comply with 15 U.S.C. § 1681i, Plaintiff suffered the injuries alleged above, and is entitled to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

**COUNT IV: Negligent Noncompliance With The FCRA Against Experian**
**(Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

77. Plaintiff incorporates by reference each of the preceding paragraphs.

78. In the alternative to Count III, Experian's conduct constituted negligent noncompliance with its duty to conduct a reasonable reinvestigation of disputed information under 15 U.S.C. § 1681i(a).

79. Experian failed to exercise reasonable care in reinvestigating Plaintiff's dispute. A reasonably careful agency would have read the file it maintained on Plaintiff, would have noticed that the payment history it was reporting contradicted the account status it was reporting, and would have declined to continue publishing information it could not verify.

80. As a direct and proximate result of Experian's negligent failure to comply with 15 U.S.C. § 1681i, Plaintiff suffered the injuries alleged above, and is entitled to actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**COUNT V: Willful Noncompliance With The FCRA Against Experian**
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))**

81. Plaintiff incorporates by reference each of the preceding paragraphs.

82. Pursuant to 15 U.S.C. § 1681e(b), a consumer reporting agency must follow reasonable procedures to assure maximum possible accuracy of the information in its reports.

83. The reporting of the Account was inaccurate. It was patently incorrect, because Plaintiff never applied for, opened, used, or benefited from the account. It was also misleading in such a way and to such an extent that it can be expected to have an adverse effect on credit decisions, because it presented Plaintiff to every user of her Experian consumer report as the obligor on a charged-off debt. Whether Plaintiff applied for, opened, or used the Account is a question of fact that is objectively and readily verifiable from the application, signature, device,

and transaction records maintained by Wells Fargo. The inaccuracy Plaintiff identifies does not depend on the resolution of any unsettled question of law.

84. Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information it reported concerning Plaintiff. Experian had no procedure that compared the payment history it published on a tradeline against the account status it published on the same tradeline, no procedure that reconciled the high credit, credit limit, and date of last activity it received from a furnisher against the data it was already reporting, and no procedure that gave any weight to the sworn FTC Report before continuing to publish a charged-off debt.

85. Experian continued to report the fraudulent Account in derogatory status after receiving the FTC Report and after both other national agencies had deleted the same tradeline. No reasonable accuracy procedure produces that result.

86. Following Plaintiff's dispute, Experian left every one of the twenty-four monthly entries on the Account unchanged, continuing to report the Account as charged off in each month.

87. Experian's failure to establish or follow such reasonable procedures was willful, representing a knowing failure to comply with its statutory duties or a reckless disregard for the accuracy of the information it compiles and disseminates concerning Plaintiff. Any reading of 15 U.S.C. § 1681e(b) that would permit an agency to publish twenty-four months of charge-off on an account it reports as last active in October 2020 is objectively unreasonable.

88. As a direct and proximate result of Experian's willful failure to comply with 15 U.S.C. § 1681e(b), Plaintiff suffered the injuries alleged above, and is entitled to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

**COUNT VI: Negligent Noncompliance With The FCRA Against Experian (Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))**

89. Plaintiff incorporates by reference each of the preceding paragraphs.

90. In the alternative to Count V, Experian's conduct constituted negligent noncompliance with its duty to follow reasonable procedures to assure maximum possible accuracy of information in its consumer reports under 15 U.S.C. § 1681e(b).

91. Experian failed to exercise reasonable care in preparing Plaintiff's consumer reports and in assuring their accuracy, and published the Account to nine users over two years while doing so.

92. As a direct and proximate result of Experian's negligent failure to comply with 15 U.S.C. § 1681e(b), Plaintiff suffered the injuries alleged above, and is entitled to actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**COUNT VII: Willful Noncompliance With The FCRA Against Experian (Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

93. Plaintiff incorporates by reference each of the preceding paragraphs.

94. Pursuant to 15 U.S.C. § 1681c-2(a), a consumer reporting agency must block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, no later than four (4) business days after the date of receipt by such agency of: (1) appropriate proof of the identity of the consumer; (2) the identification of such information by the consumer; and (3) a statement by the consumer that the information does not relate to any transaction by the consumer.

95. Plaintiff provided Experian with all necessary items for an identity theft block under 15 U.S.C. § 1681c-2(a) by the dispute package transmitted June 26, 2026, including appropriate proof of identity, the FTC Report identifying the Account as a fraudulent account

resulting from identity theft, and a statement that the Account does not relate to any transaction by Plaintiff.

96. The FTC Report alleges an identity theft, is a copy of an official, valid report filed by Plaintiff with the Federal Trade Commission, and subjects Plaintiff to criminal penalties for the filing of false information. It is therefore an "identity theft report" within the meaning of 15 U.S.C. § 1681a(q)(4).

97. Experian failed to block the reporting of the Account within four business days of receiving Plaintiff's request and documentation.

98. Upon information and belief, in the alternative, if Experian implemented a block, it rescinded that block without a valid basis and without proper notification to Plaintiff, as the Account continued to appear on Plaintiff's Experian consumer report.

99. Experian did not notify Plaintiff that it had determined, under 15 U.S.C. § 1681c-2(c)(1), that the block was requested in error, that the information was blocked in error, that the block was requested on the basis of a material misrepresentation of fact by Plaintiff, or that Plaintiff had obtained possession of goods, services, or money as a result of the blocked transaction. Where a block is declined or rescinded, 15 U.S.C. § 1681c-2(c)(2) requires that the affected consumer be notified promptly, in the same manner as consumers are notified of the reinsertion of information under 15 U.S.C. § 1681i(a)(5)(B). Experian did not so notify Plaintiff, nor did it request any additional information or documentation from Plaintiff in connection with her block request.

100. Separately, 15 U.S.C. § 1681c-2(b) required Experian, promptly upon receipt of Plaintiff's block request, to notify Wells Fargo that the information it had furnished may be the result of identity theft, that an identity theft report had been filed, that a block had been requested,

and of the effective dates of the block. Upon information and belief, Experian gave Wells Fargo no such notice.

101. Experian's failure to block, its failure to notify the furnisher, and its rescission of any block it did implement were willful, demonstrating a knowing or reckless disregard for its obligations under 15 U.S.C. § 1681c-2. Four business days is a fixed deadline. It admits no alternative reading, reasonable or otherwise. Forty-six days after Plaintiff transmitted the FTC Report, the Account was still reporting as a charged-off debt she owed.

102. As a direct and proximate result of Experian's willful failure to comply with 15 U.S.C. § 1681c-2, Plaintiff suffered the injuries alleged above, and is entitled to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

**COUNT VIII: Negligent Noncompliance With The FCRA Against Experian**
**(Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

103. Plaintiff incorporates by reference each of the preceding paragraphs.

104. Experian's conduct constituted negligent noncompliance with its duty to block the reporting of information resulting from identity theft under 15 U.S.C. § 1681c-2.

105. Experian failed to exercise reasonable care in implementing or maintaining the required block on information related to the Account, or in notifying Wells Fargo of the block request as 15 U.S.C. § 1681c-2(b) requires.

106. As a direct and proximate result of Experian's negligent failure to comply with 15 U.S.C. § 1681c-2, Plaintiff suffered the injuries alleged above, and is entitled to actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against each Defendant on the counts alleged against it, awarding the following:

I. Actual damages in an amount to be determined at trial, including damage to creditworthiness and reputation, out-of-pocket expense, lost time, and emotional distress, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

II. In the alternative to actual damages on the claims for willful noncompliance, statutory damages against each Defendant of not less than $100 and not more than $1,000 per violation, as permitted under 15 U.S.C. § 1681n(a)(1)(A);

III. Punitive damages against each Defendant in an amount to be determined at trial, as allowed under 15 U.S.C. § 1681n(a)(2), for its willful and reckless violations of the FCRA;

IV. Reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

V. Pre-judgment and post-judgment interest as allowed by law; and

VI. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury on all issues so triable.

Dated: Brooklyn, New York
September 1, 2026

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Andrea Vialva

*/s/ Serge F. Petroff*
Serge F. Petroff, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: spetroff@petroffamshen.com